UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

|  |  |
|---|---|
| In re:<br><br>RED SHIELD ACQUISITION, LLC,<br><br>Debtor. | )<br>)<br>) Chapter 7<br>) Case No.: 14-10812<br>)<br>)<br>) |

### CHAPTER 7 TRUSTEE'S MOTION (1) FOR AUTHORITY TO OPERATE BUSINESS FOR LIMITED PERIOD AND RELATED RELIEF, AND (2) TO APPROVE BREAK-UP FEE

**NOW COMES** P.J. Perrino, Jr., Esq., the duly-appointed, qualified, and acting trustee in the above-captioned case (the "**Trustee**"), by and through his undersigned counsel and, pursuant to 11 U.S.C. §§ 105, 363, 364, and 721, Federal Rule of Bankruptcy Procedure 9013, and D. Me. LBR 9013-1, hereby seeks (1) this Court's authorization for the Trustee, in his capacity as Chapter 7 Trustee and not personally, to operate the business of Red Shield Acquisition, LLC (the "**Debtor**"), and related relief, and (2) approval of the terms of a break-up fee in connection with the Trustee's proposed sale of substantially all of the Debtor's assets to Expera Old Town, LLC ("**Buyer**") subject to higher and better offers, as more particularly described in that certain Sale Agreement dated November 7, 2014 (the "**Sale Agreement**"), a copy of which is attached as **Exhibit A**,[1] to the Trustee's motion to approve such sale filed contemporaneously herewith (the "**Sale Motion**"). In support of this Motion, the Trustee states as follows.

### I. Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (M), (N), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Agreement.

5724334_1.DOC

## II. **Procedural Background**

2. On October 10, 2014, an involuntary petition for bankruptcy was filed against the Debtor by Trico Mechanical Contractors, Inc., CCB, Inc., Portage Wood Products, LLC, and Maine Woods Company LLC (collectively, the "**Petitioning Creditors**")

3. On October 14, 2014, this Court issued a summons to the Debtor [Docket No. 3].

4. On November 5, 2014, the Debtor filed a motion to dismiss the involuntary petition. [Docket No. 15].

5. On November 10, 2014, the Debtor consented to the relief requested by the Petitioning Creditors.

6. On November 10, 2014, the Court entered an Order for Relief.

7. On November 10, 2014, the Trustee was appointed as chapter 7 trustee of the Debtor's estate pursuant to 11 U.S.C. § 701.

## II. **The Sale Agreement**

8. As described more fully in the Sale Motion, the Trustee intends to move forward with a private sale of substantially all of the Debtor's assets to Buyer, subject to higher and better offers.

9. Buyer is a wholly owned subsidiary of Expera Specialty Solutions, LLC ("**Expera**"), a portfolio company of KPS Capital Partners, LP ("**KPS**").

10. Expera is a leading North American manufacturer of specialty paper products for use in the pressure-sensitive release liner, industrial and food packaging segments. Headquartered in Wisconsin, Expera employs approximately 1,800 people across four manufacturing facilities located in Rhinelander, WI, Mosinee, WI, Kaukauna, WI, and De Pere, WI.

11.     KPS portfolio companies have aggregate annual revenues of approximately $6.2 billion, operate 102 manufacturing facilities in 26 countries, and employ more than 46,000 associates, directly and through joint ventures worldwide.

### III. The Source and Mechanism For Funding Trustee's Operation of the Business[2]

12.     Under the terms of the Sale Agreement, for so long as it is effective, Expera will fund the documented, out-of-pocket costs of operating Debtor's Old Town Fuel & Fiber pulp mill located in Old Town, Maine ("**OTFF**"), excluding any legal or advisory fees and expenses relating to the transactions contemplated by the Sale Agreement ("**Operating Costs**"), pursuant to agreed upon weekly budgets as described below (the "**Funded Protective Payments**"), provided that:

a.  the total funding commitment for such Funded Protective Payments by Expera shall not exceed the aggregate sum of $1,500,000 (the "**Cap**");

b.  the funding commitment shall not extend to any expense of OTFF incurred after 11:59 p.m. on the 21st day following the date on which the Sale Motion is filed with the Bankruptcy Court; and

c.  Expera shall have no funding obligation for expenses incurred by OTFF after Expera or Patriarch Partners Agency Services, LLC ("**PPAS**"), the Debtor's secured lender and also a party to the Sale Agreement, terminates the Sale Agreement pursuant to the terms thereof.

13.     Subject to the foregoing, the Sale Agreement provides that Steve Myers on behalf of Expera and Dick Arnold, an employee of the Debtor and, following entry of an Order

---

[2] The summary of the terms of the Sale Agreement set forth herein is intended solely to provide a brief overview of certain material terms thereof. This summary is qualified entirely by reference to the Sale Agreement, and in the event of any conflict or inconsistency between the provisions of this Motion and the Sale Agreement, the Sale Agreement shall control.

approving this Motion, on behalf of and at the direction of the Trustee, shall mutually agree to a cash disbursement budget for each seven day period during the term of the Sale Agreement, beginning on the date of the Sale Agreement, and creating a new mutually agreed upon cash disbursement budget on the last day of each seven day period for the subsequent seven day period, which shall include a forecasted cash disbursement budget through December 13, 2014.

14. The Sale Agreement further provides that:

a. Except for payroll Expera funded on November 12, 2014, Expera shall fund the agreed cash disbursement budget for the next seven day period in advance on Friday of each week by payment to the Trustee;

b. Upon the incurrence by OTFF of any of the expenses set out in the mutually agreed weekly budget, and subject to entry of an Order by the Court approving this Motion, the Trustee shall be authorized to pay such expenses from the funds provided by Expera;

c. Funded Protective Payments in any week shall not exceed the agreed-upon cash disbursement budget for such week and shall not include any amount or item not included in such budget;

d. The Trustee shall refund any amounts paid by Expera that have not been incurred by OTFF prior to the termination of the Sale Agreement; and

e. If Expera shall fail to timely pay the amounts due pursuant to the Sale Agreement, PPAS may terminate the Sale Agreement immediately with notice to Expera. PPAS shall have no responsibility for payment of the expenses set forth in the budgets.

5724334_1.DOC

### IV. The Break-Up Fee

15. In consideration for Expera's funding of OTFF's operations, which will enable the Trustee to sell OTFF's business as a going concern, Expera will be entitled to a break-up fee from the proceeds of the sale of the Acquired Assets if the Trustee sells the Acquired Assets belonging to the Debtor to a party other than the nominee of Expera while the Sale Agreement remains in effect (the "**Break Up Fee**").

16. The Break-Up Fee will equal the sum of (a) any Funded Operation Costs, not to exceed the Cap, plus (b) the out-of-pocket costs and expenses incurred by Expera in connection with the transactions contemplated by the Sale Agreement, such out-of-pocket costs and expenses, not to exceed $500,000 in total (the "**Expense Reimbursement**").

### IV. Authority for Relief Requested

A. Authority to Operate Business – 11 U.S.C. § 721

17. Section 721 of the Code provides that the "court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. § 721. "Section 721 gives the trustee broad authority to operate a Chapter 7 debtor's business once the court has determined that it is in the interests of the estate to operate that business." *In re Dalen*, 259 B.R. 586, 598 (Bankr. W.D. Mich. 2001).

> Although the principal duty of the chapter 7 trustee is "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," 11 U.S.C. § 704(1), section 721 of the Code allows bankruptcy courts to authorize a chapter 7 trustee to operate the debtor's business for a limited period of time, if operation of the business is in the best interest of the estate and consistent with an orderly liquidation. *See* 11 U.S.C. § 721.

*In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 319 n.6 (3rd Cir. 2003); *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 668 (Bankr. S.D. Tex. 2009) *aff'd sub nom. Hsu v. W.*, CIV.A. H-09-3131, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) ("In the few opinions that have found § 721 authorization necessary, the trustees were attempting to operate or to expand the businesses as going concerns."); *In re Transcon Lines*, 178 B.R. 228, 234 (Bankr. C.D. Cal. 1995) ("The Code authorizes that under appropriate circumstances the trustee may even operate the debtor's business for a limited period, *see* § 721, thereby allowing for the possibility of a sale of the business as a going concern."); *In re A & T Trailer Park, Inc.*, 53 B.R. 144, 147 (Bankr. D. Wyo. 1985) ("Section 721 contemplates such authorization only in a limited number of situations, such as where it appears that a business could be sold for a greater price as a going concern than would be obtained in ordinary liquidation.").

18. Here, the Trustee seeks the Court's authority under § 721 of the Code to operate OTFF's assets for precisely the reasons articulated in the cases cited in the prior paragraph.

19. To date (both pre- and post-petition), the uninterrupted provision of services and power to the mill has been critical to the prevention of any number of potential, significant negative consequences that would be more likely than not to occur if OTFF were allowed to shut down completely and go dark. Those continued services and power have been, and will remain, critical to the ultimate fate of OTFF and the financial condition of the estate and its assets, as well as the estate's ability to maximize any potential distribution to its creditors.

20. By allowing the Trustee to operate Debtor's business as described above, the Trustee will have the ability to preserve the potential going concern of Debtor's business and the estate's assets and avoid the immediate shutdown of the assets to the severe detriment and harm to the estate and the myriad parties-in-interest.

5724334_1.DOC

B.  Retroactive Relief For Authority to Operate Business and Fund Operations

21. The Trustee seeks authorization to operate Debtor's business under § 721 of the Code on a retroactive basis to the date of his appointment, November 10, 2014. *See, e.g., In re Consol. Auto Recyclers, Inc.,* 123 B.R. 130, 141-42 (Bankr. D. Me. 1991) (citations omitted) ("This court has discretionary authority under 11 U.S.C. § 105 to enter an order *nunc pro tunc* under appropriate circumstances. . . . When entering an order retroactively will further the purposes of the Bankruptcy Code without unfairly prejudging parties-in-interest, *nunc pro tunc* effect may, and should, be provided."); *accord In re Wren*, 315 B.R. 921, 923-24 (Bankr. M.D. Ga. 2004); *In re Hillard Dev. Corp.*, 2004 WL 1347049 (Bankr. S.D. Fla. Apr. 16, 2004).

22. Here, the Trustee asserts that, under the particular and extraordinary circumstances presented in this case, entering an order retroactively authorizing the Trustee to operate the business of Debtor for a limited period under the terms described above and in the Sale Agreement will, for the reasons set forth above, further the purposes of the Code without unfairly prejudicing parties-in-interest. For these reasons, it is appropriate for this Court to approve the Trustee's authorization to operate Debtor's business retroactively to November 10, 2014, and to fund OTFF's continued operations in the manner set forth herein and in the Sale Agreement.

C.  Approval of Break-Up Fee

23. Finally, the Sale Agreement provides that upon the occurrence of certain events, the Trustee and/or PPAS will be obligated to pay Expera the Break-Up Fee and the Expense Reimbursement.

24. Buyer, Expera and KPS have incurred and will incur significant time, expense and costs in negotiating the terms of the Sale Agreement, as well as in conducting due diligence.

Moreover, the uninterrupted provision of services and power to OTFF has been critical to the prevention of any number of potential, significant negative consequences that would be more likely than not to occur if the Trustee could not quickly find alternative funding to prevent OTFF from shutting down completely and going dark. Those continued services and power have been, and will remain, critical to the ultimate fate of OTFF and the financial condition of the estate and its assets, as well as the estate's ability to maximize any potential distribution to its creditors.

25. In addition, Expera and the Buyer were unwilling to enter into the Sale Agreement, which if approved by the Court will provide substantial benefits to creditors and many parties in interest, including nearly 200 employees, absent the protections afforded by the Break-Up Fee and the Expense Reimbursement.

26. In light of these considerations, the Trustee believes that the Break-Up Fee, which does nothing more than reimburse Expera for actual, necessary costs and expenses of preserving estate assets, and the Expense Reimbursement, are reasonable and should be approved by this Court.

## Conclusion

**WHEREFORE**, Chapter 7 Trustee, P.J. Perrino Jr., Esq., requests that the Court enter an order:

A. authorizing the Trustee to operate Debtor's business, pursuant to § 721 of the Code as described above;

B. authorizing the Trustee to fund OTFF's continued operations in the manner set forth herein and in the Sale Agreement;

C. approving the Break-Up Fee; and

D. granting the Trustee such other relief as is just and equitable under the circumstances.

5724334_1.DOC

Dated at Portland, Maine this 14th day of November, 2014.

/s/ *Nathaniel R. Hull*
Nathaniel R. Hull, Esq.
Roger A. Clement, Jr. Esq.
Counsel for P.J. Perrino, Esq.,
Chapter 7 Trustee of the estate of Debtor,

VERRILL DANA LLP
One Portland Square
P. O. Box 586
Portland, ME  04112-0586
207-774-4000 - Phone
207-774-7499 - Fax

5724334_1.DOC