**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Chapter 7 |
| RED SHIELD ACQUISITION, LLC, | ) Case No.: 14-10812 |
|  | ) |
| Debtor. | ) |
|  | ) |

**MOTION FOR ENTRY OF AN ORDER (1) APPROVING THE SALE AGREEMENT AMONG RED SHIELD ACQUISITION , LLC AND EXPERA OLD TOWN, LLC; (2) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 363(f), AND 363(m); (3) APPROVING ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (5) GRANTING RELATED RELIEF**

**NOW COMES** P.J. Perrino, Jr., Esq. (the "**Trustee**"), the duly-appointed, qualified, and acting trustee in the above-captioned case of Red Shield Acquisition, LLC ("**RSA**" or the "**Debtor**"), pursuant to 11 U.S.C. §§ 105(a), 363 and 365, as supplemented by Rules 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and D. Me. LBR 6004-1, for authority to sell substantially all of the Debtor's assets to Expera Old Town, LLC ("**Expera**" or the "**Buyer**"), or to any other successful bidder, as more particularly described in that certain Letter Agreement dated November 7, 2014 (the "**Sale Agreement**"), a copy of which is attached hereto as **Exhibit A**.[1]  By this motion (the "**Sale Motion**"), the Trustee also seeks authority to assume and assign to Expera certain executory contracts and unexpired leases in connection with the sale. The proposed sale shall be free and clear of all liens, claims and encumbrances with all such liens, claims and encumbrances to

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Agreement.

5724264_1.DOC

attach to the proceeds of the proposed sale, except as provided herein. The Trustee also seeks approval of the Form and Notice of Sale Hearing attached to this Motion (the "**Sale Notice**"). Finally, the Trustee seeks an order pursuant to Bankruptcy Rules 6004(h) and 6006(d) authorizing him to consummate the proposed sale immediately after entry of this Court's order granting this Sale Motion. In support hereof, the Trustee states as follows:

## Summary of Relief Requested

The Trustee files this Sale Motion and seeks the authority of this Court to conduct a sale of substantially all of the Debtor's assets in an effort to maximize value to the estate and its creditors and, in doing so, permit the mill to resume full operations as soon as possible. The Trustee respectfully submits that the sale proposed in this Sale Motion is the best method of selling the RSA Acquired Assets (as defined herein).

### I. Jurisdiction, Venue and Statutory Basis for Relief

1. The United States District Court for the District of Maine (the "**District Court**") has original but not exclusive jurisdiction over this chapter 7 case pursuant to 28 U.S.C. § 1334(a) and over this Sale Motion pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a) and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this chapter 7 case and this Sale Motion to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has constitutional authority to enter final judgment in this proceeding.

3. Venue over this chapter 7 case is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The relief sought in this Sale Motion is predicated upon 11 U.S.C. §§ 105(a), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9007, 9014 and 9019, and D. Me. LBR 6004-1.

## II. Procedural and Factual Background

5. On October 10, 2014, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor by Trico Mechanical Contractors, Inc., CCB, Inc., Portage Wood Products, LLC, and Maine Woods Company LLC (collectively, the "**Petitioning Creditors**")

6. On October 14, 2014, this Court issued a summons to the Debtor [Docket No. 3].

7. On November 5, 2014, the Debtor filed a motion to dismiss the involuntary petition. [Docket No. 15].

8. On November 10, 2014, the Debtor consented to the relief requested by the Petitioning Creditors.

9. On November 10, 2014, the Court entered an order for relief. [Docket No. 34]

10. On November 10, 2014, the Trustee was appointed as chapter 7 trustee of the Debtor's estate pursuant to 11 U.S.C. § 701.

### A. Pre-Petition Secured Indebtedness

11. Based on his review to date, the Trustee has determined that, pre-petition, the Debtor entered into certain financing transactions. Specifically, on November 3, 2008, RSA entered into that certain Credit Agreement with Patriarch Partners Agency Services, LLC as Agent ("**PPAS**") on behalf of the Lenders thereto (the "**PPAS Credit Facility**").[2]

12. Based upon his review to date, the Trustee has further concluded that a certain Security Agreement and certain Mortgage dated as of November 3, 2008, among RSA as Grantor

---

[2] Anything that could be interpreted in the Sale Agreement or this Sale Motion to the contrary notwithstanding, the Trustee's and the Debtor's estate's claims, rights, arguments and objections (including those regarding the validity, priority, extent or enforceability of any security interest or mortgage lien claimed by PPAS or any other party claiming an interest in the Debtor's assets), are all expressly preserved and no release or waiver of any claim shall be delivered or in effect unless confirmed by a release delivered at Closing (as defined in the Sale Agreement).

and PPAS as agent, RSA granted a security interest and mortgage lien over substantially all its assets, including but not limited to all personal and real property. *See*, however, *supra*, n2.

13. The Trustee has been informed that, on August 20, 2014, PPAS delivered a Notice of Default and Acceleration to RSA.

14. The Trustee has been informed that, on August 21, 2014, PPAS accepted substantially all of RSA's personal property in partial satisfaction of RSA's obligations under the PPAS Credit Facility. Accordingly, the Debtor's remaining obligations to PPAS under the PPAS Credit Facility are secured by a first-priority mortgage on substantially all of Debtor's remaining assets, namely its real property.

15. PPAS asserts that the amount due under the PPAS Credit Facility after accepting all of RSA's personal property in partial satisfaction of RSA's obligations under the PPAS Credit Facility is $26,393,356.54. Accordingly, it appears to the Trustee that PPAS is significantly undersecured with respect to the PPAS Credit Facility.

16. Based upon the title report attached hereto as **Exhibit B** all mortgages and security agreements securing the PPAS Credit Facility were timely and properly perfected by appropriate recordings. *See*, however, *supra*, n2.

17. It appears to the Trustee upon review of the title report attached hereto as **Exhibit B** that a number of parties claim junior secured interests in certain of the Debtor's real property and that certain parties assert senior interests by virtue of mechanics liens.

   B.   **Post-Petition Activity**

18. Subsequent to the Petition Date, the Trustee filed a motion seeking authority to operate the Debtor's business (the "**Motion to Operate**").

-4-

5724264_1.DOC

19. Pursuant to the Motion to Operate, the Trustee is seeking approval to fund limited post-petition operations and also approval of a break up fee in the event of a sale of the RSA Acquired Assets to any party other than Expera while the Sale Agreement is in place. A hearing on the Motion to Operate is scheduled for Tuesday, November 18, 2014 at 1PM. If the Motion to Operate is approved, then pursuant to the terms of the Sale Agreement, the Buyer will fund RSA's operations pending Closing through the Funded Protective Payments subject and pursuant to the terms of the Sale Agreement.

### C. Pre- and Post-Petition Marketing Efforts

20. The Trustee is informed that, prepetition, the Debtor engaged in a concerted effort to sell its assets as a going concern or by means of liquidation. The Debtor's prepetition sales efforts included communications and negotiations with several parties. The result of those contacts and negotiations led to the negotiation and execution of the Sale Agreement with Expera Specialty Solutions, LLC, whose affiliate, Expera Old Town, LLC, is the proposed purchaser of the Debtor's assets and the assets formerly owned by the Debtor and now owned by PPAS. In order to preserve the going concern value of the Debtor's assets and to comply with the terms of the Sale Agreement, the sale of the Debtor's assets such sale must occur on an expedited basis.

21. Notwithstanding the extensive prepetition sale efforts undertaken by the Debtor, the Trustee intends to notice this proposed sale to a number of potentially interested parties and will file a declaration concerning those efforts in advance of any hearing on this Sale Motion.

22. Additionally, there has been almost continuous press coverage of this potential sale, alerting any number of potential (but unknown) buyers that these assets are "in play." *See, e.g.*, copies of Bangor Daily News and Portland Press Herald news articles announcing the potential sale, attached hereto as **Exhibit C.**

### III. Relief Requested

23. In light of the Debtor's efforts to market its assets before appointment of the Trustee, the Trustee concluded that the terms of the Sale Agreement represent an attractive outcome for this estate. The Trustee notes further that any competing bidder for the Debtor's assets is free to make an offer to acquire the Debtor's assets (and those of PPAS), subject to the terms of the Sale Notice and the approval of this Court.

24. Pursuant to this Sale Motion, the Trustee requests entry of an order authorizing him to sell the RSA Acquired Assets (as defined below) to Expera (or other such entity, if any, that submits a higher and better offer accepted by the Trustee, hereinafter the "**Successful Bidder**") free and clear of all liens, claims, encumbrances and interests. Additionally, the Trustee seeks authority to assume and assign the Debtor's interest in certain executory contracts and unexpired leases (the "**Assumed Contracts**") to Expera or the Successful Bidder. In connection with the sale and assignment, the Trustee requests that this Court enter an order approving the proposed sale, which would (i) authorize and approve the proposed sale pursuant to the terms of the Sale Agreement and (ii) approve the assumption and assignment of the Assigned Contracts.

I. **BASIS FOR RELIEF**

    A. **Summary of Sale**

25. The Sale Agreement contains the material terms of Expera's proposed purchase and should be consulted as to all of the terms of the proposed sale. Certain material terms of the Sale Agreement are summarized as follows:[3]

---

[3] The summary of the terms of the Sale Agreement set forth herein is intended solely to provide a brief overview of certain material terms thereof. This summary is qualified entirely by reference to the Sale Agreement, and in the event of any conflict or inconsistency between the

-6-

a.  RSA Acquired Assets: The RSA Acquired Assets consist of: (i) all real property (together with all buildings, fixtures, structures and improvements situated thereon) of the Debtor; (ii) all permits and licenses related to the pulp mill operation of OTFF to the extent transferable by the Debtor and subject to all necessary approvals; (iii) substantially all accounts receivable, notes receivable and other receivables; (iv) all goodwill and other intangible assets; and (v) prepaids and security deposits.

b.  Assigned Contracts: Assigned Contracts include such material contracts, if any, as Expera elects to assume in the Transaction Documents, to the extent transferable, upon notice to the Trustee with sufficient time to permit him to give notice of any proposed cure amount to any counterparties thereto.

c.  Excluded Assets: Expera will not acquire (i) the Bio-Refinery Assets, (ii) any contract that is not an Assumed Contract, (iii) RSA's investment in White Mountain Tissue, LLC, (iv) the account receivable due from Gorham Paper and Tissue, LLC or (v) the school house across the street from OTFF, the rifle range and the old bark pile, south of OTFF and partly in the town of Orono.

d.  Sale Free and Clear: The transfer of the RSA Acquired Assets to Expera shall be free and clear of all liens, claims, encumbrances and interests except as identified therein.

e.  Purchase Price: The Gross Purchase Price for all Acquired Assets is $10.5 million, less certain Assumed Liabilities resulting in a Cash Purchase Price of $7.3 million.

f.  Cure Costs: Expera shall pay any amounts payable under 11 U.S.C. § 365(b)(1)(A), (B), or (C) in order to effectuate the assumption of the Assumed Contracts.

g.  Closing Costs: Expera shall pay any recording fees. Transfer of the RSA Acquired Assets by the Trustee to Expera will be exempt from transfer taxes pursuant to 36 MRS § 4641-C(14). Other costs associated with the closing of the Sale Agreement shall be allocated as provided in the Sale Agreement.

h.  Release of PPAS: Anything in the Sale Agreement notwithstanding, at Closing PPAS shall provide consideration in

---

provisions of this Motion and the Sale Agreement, the Sale Agreement shall control. *See*, however, *supra*, n2

-7-

the amount of $300,000 or, in the event of a higher and better offer, 3% of the Gross Purchase Price, to the Trustee for the benefit of the Debtor's estate in exchange for a full release of all claims by the Trustee and the officers, directors, agents, employees and attorneys of RSA against PPAS as agent, its affiliates and against the Lenders to the PPAS Credit Facility, including the respective officers, directors, agents, employees and attorneys of each of the foregoing.

i. <u>Conditions to Closing</u>: Conditions to Closing includes, but are not limited to, (i) entry of an order by this Court approving the Sale Motion on or before 21 days following the date the Sale Motion is filed and (ii) the Buyer's obtaining such approvals and permits needed to operate the OTFF pulp mill and related facilities on terms that are no less favorable to the Buyer taken as a whole as those enjoyed by the Debtor.

### B.    Request for Authority to Sell Substantially All of Debtor's Assets

26.    Section 363(b)(1) of the Bankruptcy Code provides authority for a trustee, "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The authority to sell assets conferred upon a trustee by section 363(b) of the Bankruptcy Code includes a sale of substantially all the assets of an estate. *See In re Coastal Cable T.V., Inc.*, 24 B.R. 609, 611 (1st Cir. B.A.P. 1982) (vacated on other grounds) ("A sale of all or most of a debtor's assets may occur prior to confirmation of a plan."); *In re GSC, Inc.*, 453 B.R. 132, 155 (Bankr. S.D.N.Y. 2011) ("In addition to a reorganization plan, a section 363(b) sale is an appropriate means of disposing of the debtor's assets. . . . 'A debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation . . . .'") (quoting *In re Chrysler, LLC*, 405 B.R. 84, 96 (Bankr. S.D.N.Y. 2009)); *In re CadKey, Inc.*, 317 B.R. 19, 24 (D. Mass. 2004) (affirming order authorizing sale of substantially all of debtor's assets); *In re Envisionet Computer Svcs., Inc.*, 275 B.R. 664, 666 (D. Me. 2002) (noting that bankruptcy court entered an order approving the sale of substantially all of the debtor's assets).

5724264_1.DOC

27. The power to approve a sale under section 363(b) is within the sound discretion of the trial court.

28. Assuming that the standard for approval of a sale of substantially all of a debtor's assets applies to the proposed sale of the RSA Acquired Assets, the "sound business purpose" test is easily met. As described in the Sale Agreement, the Buyer has agreed to fund certain essential operating costs, without which the Trustee would be unable to maintain the Debtor's operations. The Buyer's Funded Protective Payments will only be available to the Debtor's estate while the Sale Agreement is in effect. A sale of the RSA Acquired Assets as a going concern will maximize the value of the estate for the benefit of all stakeholders. In contrast, the delay attendant in an extended sale process would almost certainly result in a material loss of value.

29. Courts have also required that the sale price be fair and reasonable and that the sale be the result of good faith negotiations with Expera *See, e.g.*, *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147-50 (3d Cir. 1986); *see also* 11 U.S.C. § 363(m) ("The reversal or modification on appeal of an authorization under [§ 363(b)] of a sale or lease of property does not affect the validity of a sale or lease . . . to an entity that purchased or leased such property in good faith . . . .").

30. As noted above, the Trustee is informed that the Debtor's assets have been marketed extensively to numerous potential purchasers over a period of the past three months. The offer of Expera as set forth in the Sale Agreement is the highest and best offer the Debtor has received to date. Accordingly, the price, form and structure of the offer proposed by Expera has been tested in the marketplace. The Trustee further believes the Sale Agreement was the product of good faith and arm's length negotiations between the Debtor and Expera  This Sale

Motion and the notice of sale, filed concurrently herewith and which the Trustee has requested this Court approve, are fair to all parties and are designed to permit the Trustee to obtain the highest and best possible price for the RSA Acquired Assets, and maximize recovery for the Debtor's estate.

31. The Trustee submits that the proposed sale of the RSA Acquired Assets to Expera is entirely consistent with the guidelines set forth in applicable case law. The Trustee believes that a prompt sale is in the best interests of the Debtor's creditors and other parties-in-interest, and will maximize the amount that the Debtor, its creditors, and other parties in interest may realize from the sale of the RSA Acquired Assets.

### C. Sale Free and Clear of Liens, Claims and Interests

32. The Trustee requests authorization to sell the RSA Acquired Assets free and clear of liens, claims, encumbrances, and other interests subject to the provisions contained herein. Section 363(f) of the Bankruptcy Code provides that:

> The trustee may sell property under [§ 363(b)] free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "Because the language of § 363(f) is in the disjunctive, courts can approve a sale if any one of the five conditions is satisfied." *BAC Home Loans Servicing LP v. Grassi*, 2011 WL 6096509 at *5 (1st Cir. BAP Nov. 21, 2011).

33. The Trustee expects that he will satisfy, at a minimum, the second and fifth of the requirements under section 363(f). Without limitation, the Trustee anticipates that he will obtain the consent of those entities holding a secured interest in the RSA Acquired Assets.

34. Alternatively, if any of the secured creditors asserting an interest in the RSA Acquired Assets are not willing to consent to the sale of the RSA Acquired Assets, the Court is nonetheless empowered to authorize the sale free and clear of any such interest as long as that creditor receives the value of its collateral. *See In re Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); *In re Beker Indus. Corp.*, 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986). Those secured creditors could be compelled to accept a money satisfaction of their respective interests pursuant to section 363(f)(5) of the Bankruptcy Code. *See, e.g.*, *In re James*, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997); *In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 461-62 (E.D. Mich. 1995).

35. Other than liens expressly assumed by Expera in the Sale Agreement, all liens against the RSA Acquired Assets will attach to the cash proceeds received from the sale of those Assets in the same force, effect and priority as such liens have existed prior to the Petition Date, subject to the rights and defenses, if any, of the Trustee and/or the Debtor or any party in interest.

### B.  Assumption and Assignment of Executory Contracts and Unexpired Leases

36. A trustee is authorized to assume an executory contract and unexpired lease provided that, at the time of assumption, the trustee: (1) cures, or provides adequate assurance that the trustee will promptly cure, any default; (2) compensates, or provides adequate assurance that the trustee will promptly compensate, the counterparty for any actual pecuniary loss resulting from any default; and (3) provides adequate assurance of future performance under the executory contract or unexpired lease. *See* 11 U.S.C. § 365(a), (b)(1). A default based upon the

filing of the bankruptcy case or the insolvency or financial condition of the debtor need not be cured. *See* 11 U.S.C. § 365(b)(2).

37. In the case of an assumption and assignment, the purchaser or assignee provides the adequate assurance of future performance. See 11 U.S.C. § 365(f)(2). The Bankruptcy Code does not define the term "adequate assurance," and courts have found that "the term 'adequate assurance' was intended to be given a practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). Adequate assurance is "something less than an absolute guarantee." *Id.*

38. In this case, the Sale Agreement, contemplates that certain unexpired leases and executory contracts will be assumed and assigned to Expera or the Successful Bidder. The Trustee, pursuant to this Motion, seeks to assume and assign the Debtor's interest in those executory contracts and unexpired leases designated by Expera or the Successful Bidder to be assumed, if any.

39. To accomplish this goal in the most fair and expeditious manner, the Trustee shall provide the counterparties to such agreements with notice and a reasonable opportunity to object to the proposed assumption and assignment of the agreement, to stated cure amounts, if any, and for a process to resolve any disputes with respect to such cure amounts.

40. The Trustee shall provide each of the non-Debtor parties to the Assumed Contracts notice of the Trustee's assumption, assignment, transfer and/or sale to the Buyer if the Assumed Contracts, together with a statement therein from the Trustee with respect to the amount, if any, to be paid to such non-Debtor party under Bankruptcy Code section 365(b) as a condition to assumption and assignment (the "**Cure Amount**" and collectively, the "**Cure Amounts**") no later than seven [7] days prior to the Sale Hearing. Accordingly, each non-

Document      Page 13 of 15

Debtor party to the Assumed Contracts shall have an opportunity to object to the Cure Amount set forth in the notice. In addition, upon request, the Buyer shall provide adequate assurance of its ability to perform its obligations under each of the Assumed Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

41. The Buyer or the Successful Bidder shall pay the Cure Amounts set forth on **Exhibit B** to the Sale Order promptly after the Closing of the Sale Transaction; *provided, however*, that prior to such date, the Buyer or the Successful Bidder may direct the removal of any such contract or lease from the list of Assumed Contracts, in which case such contract or lease shall not constitute an Assumed Contract and Buyer or the Successful Bidder shall have no obligation to pay any Cure Amount with respect thereto. Buyer or the Successful Bidder may direct the removal of any Contract from the list of Assumed Contracts (i) prior to the Closing Date, for any reason, and (ii) after the Closing Date, if the Cure Amount for such Contract is subject to dispute as of the Closing.

42. Finally, the Trustee requests that he and the Debtor be relieved from any further liability with respect to the Assumed Contracts after assumption and assignment to Expera *See* 11 U.S.C. § 365(k).

### V. Form and Manner of Notice

43. The Trustee respectfully requests that the Court approve the form, manner and sufficiency of the notice to be given of the Sale Motion, and the transactions and other matters contemplated hereby, including without limitation, approval of the Sale Agreement and the time for the Sale Hearing (collectively, the "**Sale Notice**"). The Sale Notice is attached hereto as **Exhibit D**. Bankruptcy Rules 2002, 6004, and 9007 and D. Me. LBR 2002-1 and 6004-1 provide the Court with flexibility in regulating notice of an intended sale. Rule 9007 in particular

5724264_1.DOC

authorizes the Court to regulate and approve not only the time within which the notice is to be served and the parties to be served, but the form and manner of the proposed notice. Therefore, for the reasons articulated in more detail above, and pursuant to § 105(a)'s broad grant of equitable powers, the Trustee respectfully requests that the Court approve the Sale Notice attached hereto as **Exhibit D**.

44.     The Trustee shall provide notice as follows: (a) the Sale Notice on parties appearing on the Debtor's matrix; and (b) and the Sale Motion and Sale Notice on:

    a.    the United States Trustee;

    b.    counsel to Expera;

    c.    counsel to PPAS;

    d.    all entities known to have expressed an interest in acquiring any of the RSA Acquired Assets;

    e.    the non-Debtor parties to the Assumed Contracts;

    f.    counsel to the Maine Department of Transportation;

    g.    the United States Environmental Protection Agency;

    h.    the United States Attorney's office;

    i.    all parties known to the Trustee to have or assert any liens, claims and encumbrances or other interests against the RSA Acquired Assets;

    j.    all parties having filed requests for notices in the Debtor's case.

## CONCLUSION

Based upon the foregoing, the Trustee requests that the Court enter the proposed sale order authorizing the sale of the RSA Acquired Assets to Expera, subject to higher and better offers as disclosed in the Sale Notice and grant such other relief to the Trustee as the Court

deems just and proper. In addition, the Trustee requests that this Court enter an order waiving the provisions of Bankruptcy Rules 6004(h) and 6006(d).

Dated at Portland, Maine this 14th day of November, 2014.

/s/ *Nathaniel R. Hull*
Nathaniel R. Hull, Esq.
Roger A. Clement, Jr. Esq.
Counsel for P.J. Perrino, Esq.,
Chapter 7 Trustee of the estate of Debtor,

VERRILL DANA LLP
One Portland Square
P. O. Box 586
Portland, ME  04112-0586
207-774-4000 - Phone
207-774-7499 – Fax
nhull@verrilldana.com
rclement@verrilldana.com
bankr@verrilldana.com